The undersigned have reviewed the prior Opinion and Award based upon the record of proceedings before Deputy Commissioner Dillard. The appealing party has shown good ground to reconsider the evidence; and, upon review of the evidence of the record herein, the Full Commission REVERSES the Opinion and Award of the deputy commissioner.
STIPULATIONS
1. The following items were entered into evidence by stipulation of the parties:
(a) A set of medical records from 14 different providers;
(b) Form 28B dated 12 August 1992;
(c) Plaintiff's response to defendants' interrogatories;
(d) Records of the North Carolina Employment Security Commission;
 (e) Transcript of a deposition of Dr. Davis Frederick taken on 7 February 1994; and
 (f) Transcript of a deposition of Dr. Michael Bowman taken on 7 February 1994.
2. The Full Commission finds as facts and concludes as matters of law those stipulations agreed upon by the parties in the Form 21 agreement approved herein on 10 April 1991.
* * * * * * * * * * * * * * *
Based upon the competent evidence from the record herein, the Full Commission makes the following
FINDINGS OF FACT
1. On 21 February 1991, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer when she was struck from behind and knocked down by a pickup truck as plaintiff was loading items for a customer. Plaintiff was struck on the upper part of her back. Plaintiff sought treatment at Wayne Memorial Hospital's emergency room that same day. She was examined and found to have a cervical strain and multiple contusions. Plaintiff was later released from the emergency room with instructions to follow up with her physician.
2. Plaintiff followed up with Dr. W.H. Pate, her family physician on 25 February 1991. At that time plaintiff was experiencing neck pain and blurred vision. After a short course of treatment, Dr. Pate referred plaintiff to Dr. L. Davis Frederick, III, an orthopaedic physician. Dr. Frederick referred plaintiff to Dr. Forest, an ophthalmologist.
3. Defendant accepted plaintiff's claim as compensable and referred plaintiff to a vocational rehabilitation consultant on 26 April 1991.
4. Plaintiff began treating with Dr. Frederick on 28 March 1991. She complained to Dr. Frederick that she had neck and shoulder pain, severe headaches, and blurred vision. Dr. Frederick noted that x-rays of plaintiff's cervical spine were normal, and recommended a bone scan if she did not improve. He also recommended that she undergo a course of physical therapy. By June, 1991, Dr. Frederick referred plaintiff to Dr. Rudolph J. Maier, a neurologist, to treat her chronic headaches.
5. By mid June, 1991, the range of motion in plaintiff's neck had improved, and the bone scan was found to be negative. Dr. Frederick recommended that plaintiff begin a work hardening program with the aim to return her to work within two weeks. Plaintiff was unable to complete the work hardening program due to pain.
6. Plaintiff was treated by Dr. Maier until 19 June 1991. He prescribed medication for plaintiff's persistent headaches and indicated that plaintiff's problem was mostly strains and aches and that she should respond well to conservative treatment.
7. In July, 1991, upon the recommendation of Sherry Crabtree, her rehabilitation nurse, plaintiff began to see Dr. Michael H. Bowman, a neurologist. At plaintiff's initial visit, Dr. Bowman's records note that plaintiff complained of neck pain with extension into the back of her head and down into her shoulders, with more right-sided pain than left. She also had complaints of headaches and numbness in her hands. Plaintiff's neurologic examination was normal with no signs of central neurologic dysfunction. Dr. Bowman's initial impression was that plaintiff was suffering from musculoskeletal neck and shoulder pain syndrome and possible bilateral carpal tunnel syndrome. He ordered an MRI of plaintiff's cervical region and a nerve conduction study of her hands. The nerve conduction study showed only borderline changes in the hand that did not indicate carpal tunnel syndrome. The MRI revealed a small central and right sided herniation at C5-6 with mild degenerative changes at C6-7.
8. At Dr. Bowman's instruction, plaintiff attempted to return to work. She reported to work with defendant-employer on 16 October 1991. She only worked for four hours and reported that she had re-injured her neck while lifting fifty pound bags of fertilizer. Plaintiff did not return to work for defendant-employer thereafter. The vocational rehabilitation consultant was advised to close her file on 18 October 1991. The file was re-opened, however, in January, 1992.
9. Plaintiff returned to Dr. Bowman on 30 December 1991. Plaintiff was still complaining of neck pain and pain while lifting, but overall plaintiff had improved. Dr. Bowman sent plaintiff back to physical therapy and encouraged her to find employment that would not require heavy lifting. A Work Capacity Assessment dated 21 February 1992 recommended that plaintiff's maximum lifting capacity be restricted to 14 pounds which placed plaintiff in the sedentary-light to light level of physical functioning.
10. Dr. Bowman determined that plaintiff had reached maximum medical improvement and released her from his care on 30 March 1992 with the instruction to return on an "as needed" basis only. Through the assistance of a vocational rehabilitation specialist, plaintiff began job search efforts in March, 1992.
11. With the exception of the aforementioned four hours, plaintiff did not work between 21 February 1991 and 23 March 1992. On 23 March 1992, plaintiff found work with another employer earning greater wages than in her previous employment. She worked from March, 1992 through July, 1992 and then from November, 1992 through April, 1993 with still another employer. Plaintiff's temporary total disability ended on 23 March 1992 when she returned to work in a different employment earning greater wages. At said time, plaintiff had not reached maximum medical improvement and had not been rated.
12. On 16 April 1993, plaintiff sustained minor injuries in an automobile accident while working for another employer. Plaintiff sought treatment at her employer's request at the emergency room. No further treatment was needed and plaintiff only missed a few hours from work on the day of the accident. This accident did not cause any additional work restrictions or increase in symptoms.
13. On 10 May 1993, due to an increase in pain symptoms, plaintiff presented to Dr. Ira M. Hardy, II, on a referral from Dr. Amy Price. Dr. Price took over Dr. Frederick's patients as Dr. Frederick had retired.
14. Dr. Hardy initially diagnosed a C5-C6 disk protrusion and he ordered a repeat MRI. Dr. Hardy's review of that MRI showed a significant defect at C5-C6 which caused spinal cord compression.
15. Dr. Hardy performed an anterior C5-C6 diskectomy with excision of an extruded disc on 18 June 1993. After the operation plaintiff was physically incapable of working and continued to have neck and shoulder pain. A cervical myelogram revealed a midline and bilateral C5-C6 defect with collapse of the disc space. On 20 July 1993, Dr. Hardy performed surgery again on plaintiff, this time performing an anterior C5-C6 interbody fusion using donor elect bone graft.
16. Plaintiff reached maximum medical improvement under Dr. Hardy's care on 19 January 1994 and was assigned a 15% permanent partial impairment rating to her back. Plaintiff will continue to have restricted range of motion of her neck to some degree as a result of her fusion surgery.
17. Plaintiff's surgeries on 18 June 1993 and on 20 July 1993 were directly and causally related to her 21 February 1991 work injury. Plaintiff's incapacity to work and earn wages during the periods from 18 June 1993 through 19 January 1994 was caused by, or a direct and natural consequence of her admittedly compensable 21 February 1991 injury by accident.
18. Plaintiff's automobile accident of 16 April 1993 did not significantly aggravate or accelerate her pre-existing neck condition.
19. There is no evidence that plaintiff made reasonable efforts to find suitable employment after 19 January 1994, the date she reached maximum medical improvement.
20. Plaintiff applied for and received unemployment benefits of $84.00 a week from 28 September 1993 through 28 November 1993. Defendant is entitled to a credit for said unemployment compensation received by plaintiff.
21. Plaintiff's average weekly wage was $200.00, yielding a compensation rate of $133.34.
* * * * * * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission enters the following
CONCLUSIONS OF LAW
1. On 21 February 1991, plaintiff sustained an admittedly compensable injury by accident to her back arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a result of her 21 February 1991 compensable injury, plaintiff was temporarily totally disabled from 22 February 1991 through 15 October 1991; from 17 October 1991 through 23 March 1992; and from 18 June 1993 through 19 January 1994. Plaintiff is entitled to temporary total disability compensation during said periods. N.C. Gen. Stat. § 97-29.
3. Plaintiff retains a 15% permanent partial impairment to her back as a result of her 21 February 1991 injury. Plaintiff is entitled to permanent partial disability compensation at the rate of $133.34 per week for 45 weeks for the permanent partial disability to her back. N.C. Gen. Stat. § 97-31.
4. The treatment plaintiff received from Dr. Hardy was reasonably necessary to effect a cure, give relief and/or tended to lessen plaintiff's period of disability and is hereby authorized. Any prior administrative denial is vacated. N.C. Gen. Stat. § 97-25.
5. Plaintiff is entitled to payment by defendants for all medical expenses incurred or to be incurred as a result of her compensable injury. N.C. Gen. Stat. § 97-25.
6. Defendants are entitled to a credit for any temporary total disability compensation already paid to plaintiff and for any unemployment benefits paid to plaintiff during the above temporary total disability periods.
* * * * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Subject to an attorney's fee hereinafter awarded, defendants shall pay to the plaintiff in one lump sum, uncommuted, temporary total disability compensation at the rate of $133.34 per week for the following periods: from 22 February 1991 through 15 October 1991; from 17 October 1991 through 23 March 1992; and from 18 June 1993 through 19 January 1994. Defendants shall receive a credit for any temporary total disability compensation previously paid to plaintiff and for unemployment benefits received by plaintiff.
2. Subject to an attorney's fee, defendants shall pay to plaintiff in one lump sum, uncommuted, permanent partial disability compensation at the rate of $133.34 per week for 45 weeks for the 15% permanent partial disability to her back.
3. Defendants shall pay all medical expenses incurred or to be incurred in the future by plaintiff as a result of her compensable injury when bills for same have been submitted and approved through procedures adopted by the Commission.
4. An attorney's fee in the amount of 25% of the compensation awarded the plaintiff herein after deduction for credits allowed shall be deducted from the amount due plaintiff and paid directly to plaintiff's counsel.
5. Defendants shall pay the costs due this Commission.
 S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ________________________ LAURA K. MAVRETIC COMMISSIONER
S/ ________________________ KIM L. CRAMER DEPUTY COMMISSIONER
BSB:md